IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE A. PADILLA, | : | CIVIL ACTION NO. **1:CV-06-0478** |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFREY A. BEARD, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

The Plaintiff, George A. Padilla, an inmate at the State Correctional Institution at Frackville, Frackville, Pennsylvania, ("SCI-Frackville") filed this civil rights action, *pro se*, on March 6, 2006, pursuant to 42 U.S.C. § 1983. (Doc. 1).[1]  The Plaintiff also paid the filing fee. (Doc. 6).  Plaintiff avers that he exhausted his administrative remedies regarding his present claim, but states that he did not prevail. (Doc. 1., p. 2, ¶ 4.).[2]  To date, the Complaint has not been served on the Defendants.  We must preliminarily screen the Complaint.

---

[1]Plaintiff also attached several exhibits (Nos. 1-18) to his Complaint, many of which show that he filed grievances regarding his present claim, *i.e.* his designation as an "H-Code" inmate at SCI-Frackville, and that he exhausted his Administrative remedies with the Pennsylvania Department of Corrections. (Doc. 1, Exhibits).

[2]It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Id.* at 230.  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*  However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

**I. Introduction.**

Notwithstanding Plaintiff's payment of the filing fee, the Prison Litigation Reform Act of 1995 (the "PLRA")[3] obligates the Court to engage in a screening process. Specifically, even though Plaintiff paid the filing fee for a civil rights action, we must still screen his complaint pursuant to 28 U.S.C. §1915A. *See Vega v. Kyler*, C.A. No. 03-1936 (3d Cir. 2004) 2004 WL 229073 (non-precedential) (If prisoner pays filing fee, civil rights complaint is subject to review under 28 U.S.C. § 1915A(b) and not 28 U.S.C. § 1915(e)(2)(B)).

Section 1915A provides:

> **(a) Screening**.- The court shall review, before docketing if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal**.- On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
>
> > **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> >
> > **(2)** seeks monetary relief against a defendant who is immune from such relief.

In reviewing the complaint under 28 U.S.C. §1915A(b), we have determined that the Plaintiff does not sufficiently state the personal involvement of Defendant Jeffery Beard, Pennsylvania Department of Corrections ("PA DOC") Secretary, with respect to his claim that he was "demoted" from custody level 3 to custody level 4, and that the "H-Code" was applied to him

---

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

in violation of his due process rights since it was imposed without any notice or hearing. We thus find that under §1915A(b), as stated, the Plaintiff cannot proceed as against DOC Secretary Beard since he has no personal involvement in Plaintiff's change in custody level and application of the "H-Code" to him. Therefore, we shall recommend that Defendant Beard be dismissed. We further find that with respect to the other two Defendants, Superintendent Shannon and Unit Manger Miranda, and Plaintiff's stated due process claim against them, similar claims have been found as not implicating a liberty interest by this Court. Thus, we find that Plaintiff's § 1983 action, based on the face of his pleading, fails to state a Fourteenth Amendment due process claim. Also, Plaintiff cannot sue Defendants, employees of the PA DOC, in their official capacities insofar as he seeks monetary damages, as he attempts to do. (Doc. 1, p. 2, ¶ 3.).

In an action brought pursuant to 42 U.S.C. § 1983, the Plaintiff must prove the following two essential elements in order to state a claim: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).[4]

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra.* It is also well settled in the Third Circuit that personal involvement of defendants in alleged

---

[4]Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (per curiam) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983). Permitting supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement. *Rizzo, supra*. Allowing only a letter sent to an official to be sufficient to impose supervisory liability would permit an inmate to subject defendants to potential liability in any case in which the prisoner merely transmitted correspondence to the official. *Id.* Thus, several courts have held that "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."

4

*Greenwaldt v. Coughlin*, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) (citations omitted); *accord Rivera v. Goord*, 119 F.Supp.2d 327, 344 (S.D.N.Y. 2000) (allegations that inmate wrote to prison officials and was ignored insufficient to hold those officials liable under section 1983); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) ("Receiving letters or complaints ... does not render [prison officials] personally liable under § 1983."); *Watson v. McGinnis*, 964 F.Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.") (citations omitted). The Second Circuit Court has stated that "if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability." *Walker v. Pataro*, 2002 WL 664040, at *12 (S.D.N.Y. Apr.23, 2002).

In his pleading, the Plaintiff names three (3) Defendants, all of whom are alleged to be employees of PA DOC.[5] Two Defendants are employed at SCI-Frackville. The Defendants are: Jeffery Beard, PA DOC Secretary; Robert Shannon, Superintendent at SCI-Frackville; and Ms. Miranda, Unit Manger at SCI-Frackville. (Doc.1 at p. 1, p. 3).

The Plaintiff seeks compensatory damages as well as injunctive relief in the form of the Court directing the DOC to return Plaintiff to his original custody level 3, with custody level 2 privileges with work status. (Doc. 1, p. 4).

---

[5] Since all of the individual Defendants are employees of the state, they are state actors for purposes of § 1983.

## II. Standard.

When evaluating a pleading for failure to state a claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976). A complaint filed by a *pro se* party should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (citation omitted).

As noted, the PLRA mandates the dismissal of cases that fail to state a claim on which relief may be granted. 28 U.S.C. §1915A(b)(2).

## III. Allegations of Complaint.

Plaintiff's claims commence in early 2005 while he was incarcerated at SCI-Frackville. Plaintiff alleges that the Defendants violated his Fourteenth Amendment due process rights by failing to give him notice and a hearing when the "H-Code" was imposed on him resulting in his custody level being demoted from custody level 3 to custody level 4. As a result of this code, Plaintiff avers that he was ineligible to participate in any prison and employment programs, such as educational/vocational programs, as well as phone calls. Plaintiff also alleges that this conduct

violated his Eighth Amendment rights. (Doc. 1, p. 2).  Plaintiff states that he seeks to enjoin the prison's "H-code" policy and regulation that allows the "H-Code" to be imposed on an inmate without any prior written notice and a hearing.  (*Id.*, p. 1).  Plaintiff avers that Defendant Beard is responsible for activating the H-Code DOC policy, and that this Defendant was responsible for the policy to be upheld in his case since his final appeal of his Administrative remedies regarding the imposition of the Code on him was denied by the DOC.  (*Id.*, p. 3).  Plaintiff avers that the other two Defendants were responsible for upholding the H-code policy in his case without giving him written notice and a hearing of their intention to demote his custody status level.  Plaintiff alleges that he had a protected liberty interest in participating in prison activities and programs such as employment and educational/vocational programs.  (*Id.*).  Plaintiff claims that his due process rights were violated since the DOC's H-Code policy and application in his case imposed atypical and significant hardships on him.  (*Id.*, p. 1).

The Plaintiff indicates that he filed inmate grievances with Defendants and that he appealed his grievances to exhaustion.[6]

We find that the Plaintiff has not sufficiently stated the personal involvement of Defendant Beard, and that the other two Defendants should be dismissed for failure to state a due process claim against them.  We also find that Plaintiff cannot sue Defendants for monetary damages in their official capacities.

---

[6]As mentioned,  Plaintiff has attached exhibits to his Complaint, including his grievances and appeals.

**IV. Discussion.**

    *1. Official Capacity.*

    In his pleading, the Plaintiff names all Defendants, employee of the Pennsylvania DOC, in their individual and official capacities. (*Id*. at p. 2, ¶ 3.). The Complaint as against the Defendants in their official capacities, to the extent that it seeks monetary damages, should be dismissed on the grounds that such an action is barred by the Eleventh Amendment. The Eleventh Amendment applies to claims asserted in federal court under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 342 (1979). It prohibits suits brought in federal court against a state or where the state or its agency is the real party in interest, and in which the relief sought has an impact directly on the state itself. *Pennhurst State Schools and Hospital v. Halderman,* 465 U.S. 89 (1984); *Allegheny County Sanitary Authority v. United States Environmental Protection Agency,* 732 F.2d 1167 (3d Cir. 1984). Based on the above, the Plaintiff's claim against the Pennsylvania Department of Corrections Defendants, as named in their official capacities, seeking monetary relief is barred by the Eleventh Amendment and, thus, is subject to dismissal.

    As stated, to the extent that the Plaintiffs seek monetary damages, the Defendants are immune under the Eleventh Amendment in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1991); *Howlett v. Rose*, 496 U.S. 356, 365 (1990). We believe that payment of any money judgment rendered against the Defendants, who are indisputably employees working for a prison within the Pennsylvania DOC, would have to be paid out of the Pennsylvania State Treasury. Further, the Pennsylvania DOC, which employs the Defendants, receives its funding from the state and does not enjoy any measure of autonomy. *See Bolden v.*

8

*Southeastern Pennsylvania Transp. Auth.*, 953 F. 2d 807, 818 (3d Cir. 1991).

We find that all three Defendants are immune from this suit under the Eleventh Amendment in their official capacities with respect to Plaintiff's requested relief for money damages. *Dept. of State Police*, 491 U.S. 558 (1989).[7]

### 2. Claim that Defendant Beard activated the H-Code policy and Upheld the application of the policy to Plaintiff via his Denial of grievance appeal

As stated, Plaintiff alleges that Defendant Beard improperly activated the H-Code policy in state prisons, and thus concludes that this Defendant is responsible for allowing this policy to be applied to him without giving him written notice and a hearing. (Doc. 1, p. 3). Plaintiff also avers that Defendant Beard was responsible for upholding the application of the H-Code policy in his case due to the denial of his last level DOC Administrative appeal. (*Id*.). Plaintiff's last exhibit attached to his complaint indicates that he submitted a final appeal to the DOC Chief Grievance Officer, Sharon Burks, of his grievance regarding the imposition of the H-Code to him, and that his appeal was denied.

Plaintiff's own exhibits show that Defendant Beard did not personally respond to Plaintiff's grievances and appeals. Nor did Defendant Beard have any personal involvement in the decision to impose the H-Code on Plaintiff. In fact, Plaintiff's own exhibits indicate that the prison security office ordered a review of Plaintiff's escape history due to the fact that he was implicated in an escape plot at SCI-Mahanoy in 2000. Thus, a vote sheet dated February 28, 2005 was obtained in which Plaintiff was identified as an escape risk. Following the vote sheet, an H-Code was

---

[7]As stated above, the Plaintiff also seeks injunctive relief in this case.

imposed on Plaintiff, and his custody level was changed to 4.   (Doc. 1, Exs. 1-7).  Plaintiff was also advised that his escape risk status and privileges are reviewed every year at his annual reclassification. (*Id*., Ex. 8).  Plaintiff's exhibits also show that Defendant Beard did not personally respond to his grievances regarding the placement of the H-Code on Plaintiff.  Even if Defendant Beard did personally deny Plaintiff's administrative remedies appeal, Plaintiff had no right to a grievance procedure.

The law is well-settled that there is no constitutional right to a grievance procedure.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.*  433 U.S. 119, 137-138 (1977).  This very Court has also recognized that grievance procedures are not constitutionally mandated.  *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), rev'd. in part C.A. No. 03-2056, 3d Cir. 6-8-05.  Even if the state provides for a grievance procedure, as Pennsylvania does, violations of those procedures do not amount to a §1983 cause of action.  *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995).  *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim." ) (citations omitted).  Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated.  *Burnside, supra.*

Moreover, as discussed above, an allegation that an official ignored an inmate's request for an investigation or that the official did not properly investigate   is insufficient to hold that official liable for the alleged violations.  *Greenwaldt, supra; Rivera, supra.*

As stated, it is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.*

We find that the Plaintiff's action against Defendant Beard should be dismissed since this Defendant was not personally involved in the decision at the prison to place the H-Code on Plaintiff, and he was not involved in any of Plaintiff's grievances and appeals. Even if this Defendant was involved in Plaintiff's grievances and Plaintiff implicated the manner in which his grievances were handled, this case as to Defendant Beard is subject to dismissal as it does not state a constitutional violation. Therefore, this case should be dismissed as against Defendant Beard.[8]

### 3. *Property Interest in custody Status Level for Prison Job*

The Plaintiff claims that the placement of the H-Code on him by Defendants prevented him from being employed at the prison and in participating in educational and vocational programs at the prison. The Plaintiff has no constitutional right to a prison job.

---

[8]Since we find no further personal involvement alleged with respect to Defendant Beard and the violation of Plaintiff's rights, this Defendant should be dismissed entirely from this case. *See Hampton, supra*. Specifically, Defendant Beard is not alleged to have played any role in deciding to impose the H-Code on Plaintiff or in participating in the February 28, 2005 vote sheet.

With respect to Plaintiff's claim that he is being deprived of a prison job by being demoted from his former custody level, which enabled him to obtain prison employment, he has failed to claim a deprivation of a protected property interest. As the Court in *Cummings v. Banner,* 1991 WL 238140 *5, E.D. Pa. 1991, stated:

> It is uniformly well established throughout the federal circuits that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the fourteenth amendment. *James v. Quinlan,* 866 F.2d 627, 630 (3d Cir.1989). *See also Brian v. Werner,* 516 F.2d 233, 240 (3d Cir.1975) (inmates expectation of keeping job is not a property interest entitled to due process protection); *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980) (prisoner's expectation of keeping prison job does not amount to a property interest entitled to due process protection); *Adams v. James,* 784 F.2d 1077, 1079 (11th Cir.1986) (assignment to job as law clerk does not invest inmate with a property interest in continuation as such); *Ingram v. Papalia,* 804 F.2d 595, 596 (10th Cir.1986) (Constitution does not create a property interest in prison employment); *Coakley v. Murphy,* 884 F.2d 1218, 1221 (9th Cir.1989) (no constitutional right to continuation in work release program to implicate property interest under fourteenth amendment); *Flittie v. Solem,* 827 F.2d 276, 279 (8th Cir.1987) (inmates have no constitutional right to be assigned a particular job).

Therefore, the Plaintiff's claim that the change in his custody level and placement of the H-Code on him caused him to be ineligible for a prison job and violated his Constitutional rights, should be dismissed as to Defendants Shannon and Miranda.

### 4.  *No Liberty Interest Regarding Placement of H-Code and Classification as Custody Level 4*

Plaintiff claims that the Defendants Shannon and Miranda  violated his due process  rights by placing the H-Code on him, demoting him from custody level 3 to level 4 without giving him written notice and a hearing.  Plaintiff states that the Defendants also violated his rights by causing

him to be ineligible for a prison job, and by causing him to be precluded from participating in prison educational and vocational programs.

Plaintiff's claims do not state that he had a "protected liberty interest" that was infringed by the Defendants' alleged actions.  "[T]hese interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the Due Process Clause of its own force..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  "[T]he baseline for determining what is 'atypical and significant'--the 'ordinary incidents of prison life'--is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his conviction in accordance with due process of law." *Griffin v. Vaughn*, 112 F.3d 703, 706  (3d Cir. 1997) *quoting Sandin*, 515 U.S. at 486.

Plaintiff avers that Defendants' conduct in part caused him to have a higher custody level, and to be ineligible for a prison job and for participation in prison educational and vocational programs.  Plaintiff also claims that it made him ineligible for phone calls. Plaintiff avers that Defendants conduct caused him to lose his custody 3 status level as well as caused him to be ineligible to participate in any prison programs and employment. (Doc. 1, p.2).[9]

---

[9]As previously stated, the Plaintiff has not implicated a liberty interest with respect to a prison job or with respect to his custody level. He has not implicated a liberty interest with respect to his claim that he was ineligible to participate in any prison programs.  "The control of prison educational and rehabilitation programs is a matter of prison administration and does not rise to the level of a federal claim in most instances."  *Coffey v. Ingram*, WL 82855, *1 (E.D. Pa. 1988) (Citing *Hayes v. Cuyler*, 475 F.Supp. 1347, 1350 ( E.D. Pa. 1979).  Here, Plaintiff claims that the Defendants' caused him to lose his custody level 3  with the prison and to be ineligible to participate in prison educational and vocational programs. The Plaintiff had no right to participation in these prison programs and, thus, his ineligibility for these programs,

In *Griffin*, the Court found that confinement of a prisoner in restrictive housing for fifteen (15) months did not implicate a constitutionally protected liberty interest.  Based on *Sandin* and *Griffin,* the Plaintiff's Complaint as against Defendants Shannon and Miranda fails to state a claim, since the H-Code placement on Plaintiff and the ineligibility for a prison job and participation in prison programs did not give rise to a protected liberty interest.  Further, no liberty interest is implicated by the Plaintiff because, as noted, he had no right to a particular prison job or classification.  *Sandin,* 515 U.S. at 496; *Cummings, supra.*

We also find that the Plaintiff is requesting relief in the form of Court intervention and management while he is in prison, *i.e.,* a change in his custody status level from 4 back to 3 and removal of the H-Code classification security escape risk assessment in the  prison.  The Court will not generally interfere with prison administration matters such as the prison's decision to place Plaintiff in a particular security level.  The Court should give significant deference to judgments of prison officials regarding prison regulations and prison administration.  *See Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002).

Moreover, the Plaintiff has no recognizable constitutional right to a particular custody status, *i.e.,* custody level 3 as opposed to level 4.  *See Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997).  Nor does the imposition of the H-Code classification on Plaintiff impose atypical and significant hardships on him.

---

and a prison job does not amount to a constitutional violation.

As the Court in *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997), stated:

> Applying the precepts of *Sandin* to the circumstances before us, we conclude that the conditions experienced by Griffin in administrative custody did not impose on him "atypical and significant hardship," that he was thus deprived of no state created liberty interest, and that he failure to give him a hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution.

The *Griffin* Court concluded that, considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months (*i.e.* as long as 15 months) are not uncommon. *Id.* at p. 708. Thus, the *Griffin* Court held that the inmate Griffin's transfer to and confinement in administrative custody "did not deprive him of a liberty interest, and that he was not entitled to procedural due process protection." *Id.*

Moreover, this Court in *Francis v. Dodrill,* 2005 WL 2216582 at * 2 (M.D. Pa.), stated "A violation of the Due Process Clause involves the following three elements: '1) the claimant must be 'deprived of a protectable interest; 2) that deprivation must be due to some governmental action; and 3) the deprivation must be without due process.'" (citation omitted). The *Francis* Court found that placement of its Plaintiff, a federal inmate at USP-Lewisburg, in the SMU did not implicate his due process rights. *Id.* * 3. Based on *Griffin* and *Francis*, the placement of the H-Code classification on our Plaintiff and the rise in his custody level from 3 to 4 along with the greater restrictions placed on Plaintiff do not give rise to a protected liberty interest.

In *Thorpe v. Dohman*, 2004 WL 2397399 * 2 (E.D. Pa.), the Court considered whether Plaintiff inmate's placement in the SCI-Graterford RHU on administrative custody status for 15 days

15

without receiving a hearing violated due process.  The Court stated that its Plaintiff was entitled to a hearing if he had a liberty interest in remaining in the prison's general population.  The *Thorpe* Court found that, based in part on *Griffin, supra*, the 15-day delay in giving plaintiff an administrative hearing did not violate due process.  *Id.* * 3.  The *Thorpe* Court then cited *Whittington v. Vaughn*, 289 F. Supp. 2d 621, 626 (E. D. Pa. 2003), and quoted it as follows: "The courts of this circuit have repeatedly held that temporary transfer to SCI Graterford's RHU, whether for administrative or disciplinary reasons, does not impose [atypical and significant] hardship."

Therefore, we find that none of our Plaintiff's due process rights were violated by Defendants Shannon and Miranda.  In fact, Plaintiff's exhibits show that his escape risk status which caused the H-Code to be imposed on him are to be reviewed at his annual reclassification which he had in February 2005, and presumably just had in February 2006. (Doc. 1, Ex. 8).   Our conclusion is supported by several additional cases, including the following cases.

In *Fraise v. Terhune*, 283 F. 3d 506, 522 (3d Cir. 2002), the Court held that the DOC did not violate the due process rights of state inmates who were transferred to the prison Security Threat Group Management Unit (SGTMU) without notice since inmates were not deprived of a protected liberty interest.  The *Fraise* Court concluded that:

> Here, the plaintiffs were not subjected to confinement that
> exceeded the sentences imposed upon them or that otherwise
> violated the Constitution, and therefore no liberty interest created by
> the Due Process Clause itself was impinged. *See Hewitt*, 459 U.S. at
> 468, 103 S.Ct. 864 (It is plain that the transfer of an inmate to
> less amenable and more restrictive quarters for nonpunitive reasons
> is well within the terms of confinement ordinarily contemplated
> by a prison sentence.).

*Id.*

16

The *Fraise* Court found that the inmates could not show that they were deprived of a state-created liberty interest.  The Court went on to state:

> Although inmates who are transferred to the STGMU face additional restrictions, we hold that the transfer to the STGMU does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Griffin,* 112 F.3d at 706-08 (15 months in administrative segregation not atypical and significant hardship); *see also, e.g., Jones v. Baker,* 155 F.3d 810, 813 (6th Cir.1998) (confinement in administrative segregation for two and one-half years is not atypical and significant hardship); *Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir.1996)(rejecting as frivolous a claim that classification as gang member and placement in administrative segregation unit deprived inmate of a protected liberty interest). Thus, the plaintiffs lack a protected liberty interest and their due process claim must fail.

*Id.* 522-23.

In *Bey v. PA DOC,* 98 F. Supp. 2d 650, 661, n. 25 (E.D. Pa. 2000), the Court noted that:

> plaintiff's ten-month confinement in administrative custody at [SCI] Greene does not represent such an "atypical and significant hardship on [plaintiff] in relation to the ordinary incidents of prison life" so as to trigger due process protection. *See, e.g. Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir.1997) (citing *Sandin v. Conner,* 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and finding that plaintiff's fifteen-month confinement in administrative custody did not deprive plaintiff of any "state created liberty interest, and that the failure to give [plaintiff] an administrative hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution"); *Wilson v. Horn,* 971 F.Supp. 943, 947 (E.D.Pa.1997) (stating that inmate "has no federal constitutional right to a particular custody status); *Smith v. Luciani,* Nos. CIV.A. 97-3037 and 97-3613, 1998 WL 151803, at (E.D.Pa. Mar. 31, 1998) (Prisoners, however, have no constitutional right to a hearing before a term of seven months administrative custody is imposed, because it is not atypical of the types of deprivations expected while in prison) (citing *Griffin* ).

Based on the foregoing and the well-settled case law, we find that Plaintiff's action as against

Defendants Shannon and Miranda  fails to state a due process claim.   We also find that Plaintiff has

failed to allege any personal involvement of Defendant Beard in this case.   Thus, we shall

recommend that this case be dismissed as against all three (3) Defendants.[10]

We shall therefore recommend that this case be dismissed as against Defendant Beard due

to his lack of personal involvement.   We shall also recommend that it be dismissed with respect to

the due process claim against Defendants Shannon and Miranda, since the Plaintiff has failed to

allege any constitutional or federal law violation as against these Defendants in his Complaint.   We

---

[10]We also find that Plaintiff states no Eighth Amendment claim.  Defendants are not
alleged to have been personally involved in the February 28, 2005 vote sheet in which Plaintiff
was found to be an escape risk, nor are they alleged to have known that this risk as to Plaintiff
was unfounded or that they acted with deliberate indifference to its truth.  Nor do Plaintiff's
allegations regarding the effects of the placement of the H-Code on him rise to the level of an
Eight Amendment violation.  Thus, we find no Eighth Amendment claim against the three
Defendants.

While "[t]he Constitution 'does not mandate comfortable prisons,' ... neither does it
permit inhumane ones...." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970
(1994)(quoting *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, (1981)). "[I]t is now
settled that 'the treatment a prisoner receives in prison and the conditions under which he is
confined are subject to scrutiny under the Eighth Amendment.' " *Farmer,* 511 U.S. at 832, 114
S.Ct. 1970 (quoting *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475 (1993)). Under
*Farmer,* conditions of confinement will violate the Eighth Amendment if the following two-prong
test is met: (1) the deprivation is sufficiently serious; and (2) deliberate indifference by the
prison official Defendants.  *Id.* at 834.  Stated simply, an Eighth Amendment violation exists
when the prisoner is denied "the minimal civilized measure of life's necessities" and the prison
official acted with recklessness.  *Farmer,* 511 U.S. at 834-35 (quoting *Rhodes,* 452 U.S. at 347,
101 S.Ct. 2392); *Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321 (1991). In order to find an
Eighth Amendment violation regarding conditions of confinement, the evidence must show that
the prison official was "both aware of facts from which the inference could be drawn that a
substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at
837.

Plaintiff makes no such claim as to any of our Defendants.

also do not find it necessary to allow the Plaintiff to amend his pleading based on futility. *See Shane v. Fauver*, 2131 F.3d 113, 115 (3d Cir. 2000). Thus, we shall recommend the dismissal of the stated three (3) Defendants from Plaintiff's action.

**V.  Recommendation.**

Based on the foregoing, it is respectfully recommended that Defendants Beard, Shannon and Miranda be dismissed for failure to state a claim against them pursuant to 28 U.S.C. §1915(A)(b)(1).

<div style="margin-left:40%">

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

</div>

**Dated: April 11, 2006**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE A. PADILLA, | : | CIVIL ACTION NO. **1:CV-06-0478** |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFREY A. BEARD, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 11, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


_____  s/ **Thomas M. Blewitt**
                                **THOMAS M. BLEWITT**
                                **United States Magistrate Judge**


**Dated: April 11, 2006**